**NOT FOR PUBLICATION**
UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
----------------------------------------------------------X

| | |
|---|---|
| In Re: | Chapter 11 |
| Dots, LLC., | Case No. 14-11016 (MBK) |
| Debtor. | |

----------------------------------------------------------X

| | |
|---|---|
| Dots, LLC, *et al.*, | |
| Plaintiffs, | |
| v. | Adv. Pro. No. 16-01040 (MBK) |
| Pandora Media, Inc., a/k/a Pandora Radio, | |
| Defendant. | |

**APPEARANCES:**

Henry M. Karwowski, Esq.
Joao F. Magalhaes, Esq.
Trenk, DiPasquale, et. al.
347 Mt. Pleasant Avenue
Suite 300
West Orange, NJ 07052
*Special Counsel for Dots, LLC, et al.*

John M. August, Esq.
Gaye Nell Heck, Esq.
Saiber LLC
18 Columbia Turnpike
Suite 200
Florham Park, NJ 07932
*Attorneys for Pandora Media, Inc., a/k/a Pandora Radio*

**MICHAEL B. KAPLAN, U.S.B.J.**

**MEMORANDUM DECISION**

## I. Introduction

This chapter 11 case is presently before the Court on a Motion to Amend (ECF No. 10) ("Motion") brought by Plaintiff Dots, LLC ("Dots" or "Debtor" or "Plaintiff"), seeking leave to amend its Complaint in an adversary proceeding filed against Defendant Pandora Media, Inc., also known as Pandora Radio ("Pandora"). Pandora opposes the Motion.

## II. Factual Background and Procedural History

On or about August 16, 2013, Dots entered into a media buying agency agreement (the "Master Services Agreement", or "MSA") with Media Planning and Buying Services, Inc., d/b/a Capstone Media ("Capstone"). According to the Complaint and Plaintiff's motion, Capstone is a company located in Ohio that provides marketing research, media planning, media buying, promotional services, radio advertising, and social media services. Pursuant to the MSA, funds passed from Dots through Capstone for the purchase of media services. Pandora was the ultimate recipient of such funds.

On or about January 20, 2014 ("Petition Date"), Dots filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Upon review of the Dots' books and records, it was determined by Dots' accounting professionals that approximately $872,425 was forwarded to Capstone during the ninety (90) day period preceding the Petition Date. Additionally, it was determined that Pandora had received a portion of those funds. Accordingly, on or about January 19, 2016, Dots filed its Complaint against Pandora, seeking to recover a total of $325,084.02 which Dots asserted was made in five separate preferential transfer payments. (Compl., ECF No. 1.) Pandora filed its Answer on March 4, 2016. (Answer, ECF No. 4.)

The parties then engaged in discovery. Dots asserts that it served a subpoena to Capstone in Ohio on or about October 7, 2015; however, Capstone refused to comply. Dots states that it

was unable to procure local counsel in Ohio to pursue enforcement of the subpoena due to limited resources and the cost of litigation. Nevertheless, Dots contends that special counsel ultimately ascertained that at least a portion of the funds held by Capstone were maintained by U.S. Bank, N.A. ("U.S. Bank"). On or about August 1, 2016, and again on or about October 27, 2016, Dots served U.S. Bank with subpoenas. By December 2016, U.S. Bank had substantially complied with the subpoenas and, based on the information provided, Dots determined that $10,624.99 was transferred to Pandora pre-petition; and $240,405.46 was transferred to Pandora postpetition.

Dots contends that it engaged in good faith efforts to clarify the record with counsel for Pandora and—based on that clarified information—Dots now seeks to amend its Complaint to reflect the updated record. Specifically, Dots seeks to: "(A) note the Pre-Petition Transfers as the transfers forming the subject of the Debtor's cause of action under Bankruptcy Code sections 547 and 550; (B) add a claim under Bankruptcy Code section 549 in connection with the Post-Petition Transfers; and (C) add a claim under Bankruptcy Code section 542 in connection with the Post-Petition Transfers." (Motion at 5, ECF No. 10.) Pandora filed an opposition to Dots' motion (ECF No. 11), and Dots filed a Reply Brief (ECF No. 12).

A hearing was held, and oral argument was heard, on May 15, 2017. Additionally, the parties were invited to file supplemental briefs, which the Court received on May 30, 2017. (ECF Nos. 13 & 14.) The Court has considered the submissions of the parties and the arguments set forth on the record during the May 15, 2017 hearing. For the reasons set forth below, Dots' Motion will be granted in part and denied in part.

**III.    Jurisdiction**

Jurisdiction over this action is found under 28 U.S.C. §§ 1334(a) and 157(a), as well as the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court.  This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(F) and (O), and "arises under" title 11.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  As outlined by the Third Circuit, bankruptcy jurisdiction extends to four types of title 11 matters: (1) cases "under" title 11; (2) proceedings "arising under" title 11; (3) proceedings "arising in" a case under title 11; and (4) proceedings "related to" a case under title 11. *W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 591 F.3d 164, 171 (3d Cir. 2009); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225 (3d Cir. 2005).  "'[A]rising under' jurisdiction includes any proceeding which invokes a substantive right under the Bankruptcy Code." *Revel AC, Inc. v. Polo North Country Club (In re Revel AC, Inc.)*, No. 14-22654, 2016 WL 6155903, at *5 (Bankr. D.N.J. Oct. 21, 2016) (citing *In re Bell*, 476 B.R. 168, 175 (Bankr. E.D. Pa. 2012)); *Winstar Commc'ns, Inc. v. Lucent Tech. Inc. (In re Winstar Commc'ns, Inc.)*, 554 F.3d 382, 405 (3d Cir. 2009).  A proceeding that "arises under" title 11 is also described as one involving a cause of action created by, or a substantive right determined by, a provision of title 11. *Stoe v. Flaherty*, 436 F.3d 209, 217 (3d Cir. 2006), *as amended* (Mar. 17, 2006).

The current action is one which involves alleged avoidable transfers under § 547 and § 549, thus, qualifies as a matter "arising under" title 11. *See Stern v. Marshall*, 564 U.S. 462, 497, 131 S. Ct. 2594, 2617, 180 L. Ed. 2d 475 (2011) ("A preferential transfer claim can be heard in bankruptcy when the allegedly favored creditor has filed a claim, because then the ensuing

4

preference action by the trustee become[s] integral to the restructuring of the debtor-creditor relationship.") (citation and internal quotations omitted).

## IV. Discussion

### A. Motion to Amend Standard of Review

Federal Rule of Civil Procedure 15, which applies to this adversary proceeding though Federal Rule of Bankruptcy Procedure 7015, provides that leave to amend "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). The decision to grant leave to amend is left within the discretion of the court. *Interface Group-Nevada, Inc. v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.)*, 145 F.3d 124, 141 (3d Cir. 1998). "The Third Circuit has shown a strong liberality in allowing amendments under Rule 15 in order to ensure that claims will be decided on the merits rather than on technicalities." *Carrow v. Fedex Ground Package Sys., Inc.,* No. 16-3026, 2017 WL 1536411, at *1 (D.N.J. Apr. 26, 2017) (citing *Dole v. Arco Chem. Co.,* 921 F.2d 484, 486-87 (3d. Cir. 1990)); *see also Arista Records, Inc. v. Flea World, Inc.,* 356 F. Supp.2d 411, 419 (D.N.J. 2005) (citing *Bechtel v. Robinson,* 886 F.2d 644, 652 (3d. Cir. 1989) and *Baird v. City of Atlantic City*, 100 F. Supp.2d 262, 265 (D.N.J. 2000)); *Stanziale v. Am. Friends of Yechave Daat (In re Dwek),* 2009 WL 3048439 (Bankr. D.N.J. Sept. 17, 2009) (citing *Moss v. U.S. Secret Service,* 572 F.3d 962, 972 (9th Cir. 2009)) (noting that, generally, courts grant leave to amend with "extreme liberality" in order to ensure that a case is decided on its merits). Nevertheless, a court has discretion to deny a motion to amend if "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Luciani v. City of Philadelphia*, 643 F. App'x 109, 111 (3d Cir. 2016) (quoting *U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014));

*see also Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000) (citing *Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)).

### B. Analysis

In its Motion, Dots seeks permission to amend its Complaint to recover certain pre-and postpetition payments made to Pandora which Dots identified in the course of discovery. Pandora opposes the Motion and asserts that it should be denied as futile.

Indeed, "amendment of a complaint is 'futile' if 'that claim would not be able to overcome the statute of limitations.'" *Anderson v. Bondex Int'l, Inc.*, 552 F. App'x 153, 156 (3d Cir. 2014) (quoting *Cowell v. Palmer Twp.,* 263 F.3d 286, 296 (3d Cir. 2001)). Where a claim is barred by the statute of limitations, amendment is only permitted if the proposed amended complaint "relates back to the date of the original pleading." FED. R. CIV. P. 15(c)(1); *see also Glover v. F.D.I.C.*, 698 F.3d 139, 145 (3d Cir. 2012); *Arthur v. Maersk, Inc.*, 434 F.3d 196, 207 (3d Cir. 2006). In relevant part, Rule 15(c) provides that an amendment to a pleading will relate back to the original complaint where "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." FED. R. CIV. P. 15(c)(1)(B). "Relation back is structured 'to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits.'" *Glover*, 698 F.3d at 145 (quoting *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550, 130 S. Ct. 2485, 2494, 177 L. Ed. 2d 48 (2010)).

In this case, it is clear that the statute of limitations has expired with respect to the proposed amended claims. The deadline for commencement of an avoidance action under 11 U.S.C. § 547 is two years after the date the petition is filed. 11 U.S.C. § 546(a). The deadline for the filing of

6

an action under § 549 is two years after the date of the transfer sought to be avoided. 11 U.S.C. § 549(d)(1). Here, the original Complaint—which sought to avoid transfers pursuant to 11 U.S.C. § 547—was timely filed on January 19, 2016, less than two years after the January 20, 2014 Petition Date, and less than two years after the date of the transfers at issue. The Proposed Amended Complaint—which asserts claims pursuant to §§ 547, 549, and 542—was filed on April 19, 2017, well beyond the two-year statute of limitations for § 547 claims, which expired on January 20, 2016; and more than two years after the date of the transfers at issue for § 549 purposes. Therefore, amendment will only be permitted if the Court finds that the proposed amended claims relate back to Dots' initial Complaint, as required by Federal Rule of Civil Procedure 15(c).

In their Opposition, Pandora explains that Dots does not seek to simply amend the previously asserted § 547 claims; but instead seeks to "delete the original transfer allegations and . . . allege new, separate and distinct transfers." (Opp'n to Motion at 4, ECF No. 11.) Pandora contends that the proposed additional preferential transfers are separate transactions and do not relate back to the original Complaint. Pandora cites *Coan v. O & G Industries, Inc. (In re Austin Driveway Servs., Inc.)*, 179 B.R. 390 (Bankr. D. Conn. 1995); *Gordon v. Slaughter (In re Slaughter Co. & Assocs., Inc.)*, 242 B.R. 97 (Bankr. N.D. Ga. 1999); and *Peltz v. CTC Direct, Inc. (In re MBC Greenhouse, Co.)*, 307 B.R. 787 (Bankr. D. Del. 2004), in support of its position.

In response, Dots explains that the transfers challenged in the original Complaint and those added in the Proposed Amended Complaint derive from a common set of operative facts. Thus, Dots asserts that the proposed amended claims do, in fact, arise from the conduct set forth in the original Complaint, and satisfy the relation back analysis. In support of this argument, Dots cites to *Pagano v. Pergament*, No. 11-2630, 2012 WL 1828854 (E.D.N.Y. May 16, 2012); *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 468 B.R. 620 (Bankr. S.D.N.Y. 2012); *Ogier v.*

7

*UPAC Ins. Financial (In re Bauer Agency, Inc.)*, 443 B.R. 918 (Bankr. N.D. Ga. 2011); and *Forman v. Salzano (In re Norvergence, Inc.)*, 405 B.R. 709 (Bankr. D.N.J. 2009).

During oral argument and in their supplemental briefs, the parties again restated their positions and cited additional case law. *See, e.g.*, *Burtch v. Dent (In re Circle Y of Yoakum, Texas)*, 354 B.R. 349 (Bankr. D. Del. 2006); *Brandt v. Gerardo (In re Gerardo Leasing, Inc.)*, 173 B.R. 379 (Bankr. N.D. Ill. 1994). Additionally, Dots set forth an alternative argument in favor of equitable tolling of the statute of limitations, which Pandora likewise opposes.

### 1. Relation Back

There is no Third Circuit case law directly on point as to whether newly identified avoidance actions relate back to an original complaint for purposes of Federal Rule of Civil Procedure 15(c)(2). And, as the cases cited in the parties' briefs suggest, courts appear to be divided on the issue. Nevertheless, the analyses in cases that have addressed this issue are instructive and provide guidance. More specifically, the body of case law on this subject suggests that the question of whether an avoidance action relates back—like the question of whether any proposed amended claim relates back—is case and fact specific. In large part, the answer to this question depends on the amount of notice provided to a defendant in the original complaint.

The Third Circuit has explained "that fair notice is 'the touchstone for relation back . . . because Rule 15(c) is premised on the theory that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.'" *Anderson v. Bondex Int'l, Inc.*, 552 F. App'x 153, 158 (3d Cir. 2014) (quoting *Glover*, 698 F.3d at 146). The amendment will only relate back "where the original pleading . . . give[s] a defendant 'fair notice of what the plaintiff's [amended] claim is and the

8

grounds upon which it rests.'" *Glover*, 698 F.3d at 146 (quoting *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 150 n.3, 104 S. Ct. 1723, 1725, 80 L. Ed. 2d 196 (1984)).

Indeed, many of the cases cited by Pandora found no relation back because no commonality existed between the newly challenged facts and transactions and those set forth in the original pleading. In other words, the defendants in the cases cited by Pandora were without fair notice that the newly asserted transactions would be challenged. *See In re Austin Driveway Servs., Inc.*, 179 B.R. at 399 ("[B]asic due process considerations mandate that such transferees, like any other defendant, must have timely notice of potential litigation so that the evidence necessary for a defense may be preserved."); *In re Slaughter Co.*, 242 B.R. at 101 ("Trustee seeks to avoid a transfer of which Defendant had no notice in the original Complaint."); *In re MBC Greenhouse, Co.*, 307 B.R. at 792 ("Essentially we have a whole new set of specific transactions set forth in the proposed amended complaint. . . . The Plaintiff has not produced any evidence to suggest that the Defendants had notice that the new transactions were subject to recovery.").

In contrast, in the cases cited by Dots, the courts determined that the amended complaints related back to the date of the original complaint for limitations purposes, in part, because the defendants had sufficient notice of the intent to challenge the transfers. *See In re Bernard L. Madoff Inv. Sec. LLC*, 468 B.R. at 633 ("[A]llegations in the Original Complaint of Madoff's Ponzi scheme gave reasonable notice that the Trustee was still uncovering additional transfers and seeking any amounts that may have been transferred as part of that scheme."); *In re Bauer Agency*, Inc., 443 B.R. 918 (finding that the complaint in the trustee's original avoidance action sufficiently put alleged transferee on notice that trustee intended to recover all transfers received by alleged transferee in debtor's purported Ponzi scheme); *In re Norvergence, Inc.*, 405 B.R. at 765 ("The original Complaint placed [defendant] on notice of the pending causes of action.").

9

Here, the Court finds that the original Complaint afforded Pandora sufficient notice of Dots' intent to challenge the transfers in the Proposed Amended Complaint. The facts of the instant case are not complicated. The Complaint clearly reflected Dots' intent to avoid impermissible transfers under the Code, and it identified the nature of the transactions and the parties—including the use of Capstone as an agent.[1] Additionally, the transactions challenged in the original Complaint and in the Proposed Amended Complaint all occurred within substantially the same time period: the original claims challenged transfers occurring in November and December of 2013, while the amended claims challenge transfers occurring in November of 2013, and February of 2014.[2]

Therefore, the claims in the Proposed Amended Complaint arise out of the same set of core operative facts as the original Complaint. The proposed amendments do not seek to add new, separate claims based on different facts, but seek simply to clarify the amounts and dates of the challenged transfers; and to alter the legal theory upon which Dots seeks relief. Such changes are permitted under the liberal application of Rule 15(c). *See, e.g.*, *In re Norvergence, Inc.*, 405 B.R. at 765 (permitting amendment to correct errors and to add an additional transfer); *In re Austin Driveway Servs., Inc.*, 179 B.R. at 395 (holding that "[g]enerally, an amended complaint will relate back if it merely adds a new legal ground for relief, changes the date and location of the transaction alleged . . . [or] spells out the details of the transaction originally alleged" because "[n]one of those amendments affects the quality of the notice given by the general fact situation alleged in the

---

[1] The Court notes that, in its Opposition, Pandora asserts that the proposed amendments seek to add transactions "made by a different transferor, Capstone." Opp'n at 5, ECF No. 11. However, both the original Complaint and the Proposed Amended Complaint plainly implicate Capstone as the "conduit or pass-through" for the transfers at issue. Complaint ¶ 9, ECF No. 1; Proposed Amended Complaint ¶ 7, ECF No. 10-4.

[2] The Court need not address at this time the issue as to the actual date of the transfers (*i.e.*, the date certain checks were delivered to Capstone or Pandora, or the dates the checks were accepted by the payor bank for payments). These issues will be addressed at a later date in the proceeding.

original pleading") (quotations and citation omitted); *In re Gerardo Leasing, Inc.*, 173 B.R. at 388 ("The most important factor in determining whether to allow an amended complaint to relate back to the date of the original filing is whether the original complaint provided the defendant with sufficient notice of what must be defended against in the amended pleading . . . There is no requirement, however, that the same substantive legal theory be advanced in both complaints.") (citations omitted).

Further, the allegations of the Complaint gave reasonable notice to Pandora that the Trustee was still investigating the case and could potentially identify additional claims. The Trustee specifically reserved the right to "amend the Complaint if additional transfers are discovered." (Compl. ¶ 10.) Several courts—including those cited by Pandora—have noted that an express intent to avoid all transfers during a relevant time period provides sufficient notice to defendants that additional transfers may become the subject of the litigation. *See, e.g.*, *In re Bauer Agency, Inc.*, 443 B.R. at 922 (holding, in part, that sufficient notice was given because "[t]he complaint expressly state[d] that the Trustee intend[ed] to avoid all transfers that [defendant] received during the relevant time periods"); *In re MBC Greenhouse, Co.*, 307 B.R. at 793 (finding no relation back and noting that "the original complaint was not intended to avoid all transfers to the Defendants which occurred during the 90 day period"); *In re Slaughter Co.*, 242 B.R. at 103 ("If the original complaint indicates an intention to pursue all transfers, the addition of transfers will relate back."). This Court notes that Pandora relies on *Circle Y* in support of its assertion that language in a complaint which explicitly reserves a trustee's right to amend to include additional transfers, alone, is insufficient to provide notice under Rule 15(c). *In re Circle Y of Yoakum, Texas*, 354 B.R. at 357. In that case, the United States Bankruptcy Court for the District of Delaware concluded that "a factual nexus must exist between the conduct or transactions alleged in the amendment and

11

those alleged in the original pleading." *Id.* As an initial matter, the decision in *Circle Y* is not binding on this Court. Furthermore, this Court determines that the instant decision is not inconsistent with the rationale in *Circle Y* because, as explained above, the claims in the Proposed Amended Complaint are based on the same fact pattern as those set forth in the original Complaint; thus, the decision to permit amendment in this case does not depend, alone, on the language of the original Complaint.

Finally, the Court notes that the Trustee encountered difficulty in pursuing discovery, engaged in communication with Pandora upon learning the new information, and seeks to clarify the record with the proposed amendments. Therefore, the Court finds no evidence of undue delay, bad faith, or dilatory motives which would weigh against permitting amendment.

Based on the foregoing, the Court determines that permitting amendment is appropriate under Rule 15(c). This is not a situation in which a plaintiff is attempting to "bootstrap" time-barred claims onto viable actions; rather, it appears to be a good faith attempt to clarify and correct the record. Pandora has been a party to this action since its inception, and the proposed amended claims implicate the same parties as the initial Complaint and are based on the same set of operative facts. Therefore, the original pleading provided sufficient notice to Pandora of the claims set forth in the Proposed Amended Complaint. *See, e.g., Liberty Mutual Ins. Co. (In re Citron)*, No. 08-71442, 2010 WL 2978062, at *6 (Bankr. E.D.N.Y. July 23, 2010) (holding that the original complaint put the defendants on notice that plaintiff was seeking to recover avoidable transfers allegedly paid to defendants); *In re Norvergence, Inc.*, 405 B.R. at 761 (holding that "[n]o new or additional legal theories [we]re introduced [in the proposed amendments] and the same alleged conduct, transactions or occurrences [we]re relied upon as set forth in the original Complaint[;]" and finding that, because defendant had "fully participated in the instant proceeding since almost

12

its inception," it had "received such notice of the action that it will not be prejudiced in defending the Complaint on its merits.").

For substantially the same reasons, permitting amendment will not unfairly disadvantage or prejudice to Pandora in any way. *See, e.g.*, *Dalmia v. Emigrant Mortgage Co., Inc. (In re Allserve Sys. Corp.)*, 379 B.R. 69, 73 (Bankr. D.N.J. 2007) ("In the context of a Rule 15(a) amendment, prejudice means that the nonmoving party must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered if the amendment was timely.") (quotations and citation omitted). Procedurally, the instant litigation is still in its early stages, and it has been at a near stand-still since its commencement, with little discovery having been undertaken. Defending the amended claims will not result in significant additional discovery or cost to Pandora and, given that the amended claims are based on the same fact pattern as the original Complaint, no significant additional defense preparation will be required. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (holding that, when considering prejudice to defendants, courts should consider "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories"). Further, the Court notes that the amount of money sought to be recovered in the Proposed Amended Complaint is significantly less than that sought in the original Complaint.

Given the circumstances of this case, this Court cannot conclude that Pandora was without notice that the transfers in question might be challenged, nor can it find that Pandora will be prejudiced by being required to defend the amended claims on the merits.

### 2. Proposed Claims Under § 542

In the Motion, Dots seeks to amend its original Complaint to add a claim for turnover of property pursuant to 11 U.S.C. § 542. However, as Pandora points out, Dots does not provide any legal discussion as to why amendment to include a claim under § 542 is appropriate. In its Reply brief, Dots explains that it wishes to allege, for purposes of § 542, that Pandora did not receive a "transfer" of funds from Capstone, but instead received funds held in trust for Debtor. (Reply at 10-11, ECF No. 12.) Thus, Dots contends that its proposed claim for turnover is not futile.

Section 542 provides that

> an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).

Thus, in order to recover property under § 542, the property must, first and foremost, be undisputed property of the bankruptcy estate. *See, e.g., Marchand v. Whittick (In re Whittick)*, 547 B.R. 628, 634 (Bankr. D.N.J. 2016) ("[T]he Trustee may recover the property under section 542, provided it is property of the estate and no other defense applies."); *Stanziale v. Pepper Hamilton LLP (In re Student Fin. Corp.)*, 335 B.R. 539, 554 (D. Del. 2005) ("[I]n order to state a claim for turnover of property under § 542, a plaintiff must allege that transfer of the property has already been avoided or that the property is otherwise the undisputed property of the bankruptcy estate.").

Here, Dots fails to explain how the funds it paid to Capstone pursuant to the MSA, which were then paid to Pandora, remain property of the estate. Dots baldly asserts that Capstone held the funds in trust; however, the MSA between Dots and Capstone references only invoices and payments. (MSA, ECF No. 10-4.) Thus, there is nothing in Dots' Motion, in its Proposed

Amended Complaint, or elsewhere in its submissions which suggests that the funds paid to Capstone were held in trust and constitute property of the estate. Rather, these payments appear to be transfers which are no longer property of the estate. Indeed, Dots seeks to avoid these very transfers pursuant to § 547 and § 549; and Dots' supplemental brief is devoid of any reference to § 542. (ECF No. 14.) Because the payments to Capstone are not property of the estate, Dots' proposed claims under § 542 would fail to state a claim upon which relief could be granted, amendment would be futile. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)). Accordingly, Dots' Motion is denied with respect to its proposed claims under § 542.

### 3. Equitable Tolling

In light of the Court's determination that the proposed amended claims relate back to the original Complaint for purposes of Rule 15(c), the Court need not address Dots' equitable tolling argument.

### V. Conclusion

For the reasons expressed, Dots' Motion to Amend is granted in part. Amendment is denied with respect to the § 542 claims. Counsel for Dots is directed to submit a form of order.

Dated: June 16, 2017